# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DCI SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>URBAN OUTFITTERS, INC., a Pennsylvania corporation; and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO. 10-CV-369 - IEG (JMA)<br><br>ORDER:<br><br>(1) DENYING MOTION TO STRIKE [Doc. No. 11]; and<br><br>(2) GRANTING MOTION TO DISMISS [Doc. No. 10]. |

URBAN OUTFITTERS, INC., a Pennsylvania corporation,

                                    Counter-Claimant,

        vs.

DCI SOLUTIONS, INC., a California corporation,

                                    Counter-Defendant.

        This is a contract dispute case. Currently before the Court are Counter-Defendant DCI Solutions, Inc.'s ("DCI") Motion to Strike and Motion to Dismiss certain causes of action in Counter-Claimant Urban Outfitters, Inc.'s ("Urban") counterclaim. Having considered the parties' arguments, and for the reasons set forth below, the Court DENIES the motion to strike and GRANTS the motion to dismiss WITH LEAVE TO AMEND.

**BACKGROUND**

**I.     The Parties**

DCI is a company specializing in overhead cost reduction. Working on a contingency fee, DCI helps companies identify ways to save money. DCI alleges that unlike other companies, which focus only on one expense category, it offers an expert analysis of 40 different overhead and tax categories. DCI does not charge any up-front fee and begins billing its clients only after the client has begun saving money.

Urban is an innovative specialty retail company that offers a variety of "lifestyle" merchandise to highly defined customer niches through its "Urban Outfitters," "Anthropologie," and "Free People" retail stores in the United States, Canada, and Europe, as well as through websites, catalogues, and wholesale concepts.

**II.    The Dispute**

In October 2007, DCI and Urban entered into a written agreement ("Agreement"), whereby DCI was to recommend ways Urban could save money. According to Urban, DCI promised it would "dramatically reduce" Urban's overhead costs and that Urban would realize "six figure savings" as a result of "expert" recommendations. Urban allegedly agreed to pay DCI 33% of all savings it received during the thirty-six months following the implementation of DCI's recommendations.

According to DCI, it demonstrated to Urban that Urban was paying far more than it should for its "Less than Truckload" ("LTL") freight costs. DCI estimated that by renegotiating its tariff rates with its current freight carriers, or negotiating rates with new carriers, Urban could save between $1 million and $1.5 million per year based upon its current annual shipping volume. DCI alleges that it invested valuable time and energy over a period of several months to come up with these recommendations. Urban then told DCI that it decided not to implement DCI's recommendations. DCI has since learned, however, that Urban did in fact secretly implement DCI's recommendations without notifying DCI and is now achieving significant savings on its LTL freight rates. According to DCI, Urban refuses to pay DCI the savings fee that was agreed to in the Agreement.

On the other hand, Urban alleges that DCI's consultant spent less than five hours "analyzing" Urban's extensive freight cost history, and that DCI failed to deliver any useful recommendations.

1    Accordingly, Urban rejected and did not utilize any recommendations or advice provided by DCI.

2    Urban also alleges that it subsequently discovered that DCI's representations were the core of its

3    regular business practice. According to Urban, DCI fraudulently induces company managers to enter

4    into contracts for services with DCI and to forego entering into any other contracts with competing

5    companies. In fact, DCI has no interest in genuinely analyzing a company's business practices, but

6    rather makes generic recommendations as to what the company should do to save money. Urban

7    alleges that DCI's entire business scheme is intended to fraudulently induce companies to pay DCI

8    money which it has not earned. If a company complains, DCI's practice is to file a lawsuit.

9    **III.    Procedural Background**

10       In January 2010, DCI filed this lawsuit in the Superior Court for the County of San Diego.

11   Urban subsequently removed it to this Court based on diversity grounds. DCI's complaint alleges four

12   causes of action: (1) fraud in the inducement, (2) breach of contract, (3) breach of the implied

13   covenant of good faith and fair dealing, and (4) quantum meruit.

14       In response to DCI's complaint, Urban filed a counterclaim. Urban's counterclaim alleges

15   seven causes of action: (1) fraud in the inducement, (2) fraud, (3) breach of contract, (4) violation of

16   Section 17200 of the California Business and Professions Code, (5) declaratory relief, (6) breach of

17   covenant of good faith and fair dealing, and (7) rescission based upon fraud.

18       Currently before the Court are DCI's Motion to Strike pursuant to California's anti-SLAPP

19   statute, CAL. CIV. PROC. CODE § 425.16, and Motion to Dismiss pursuant to Rule 12(b)(6) of the

20   Federal Rules of Civil Procedure with respect to certain Urban's counterclaims. Urban filed an

21   opposition to each motion, and DCI replied. The Court heard oral argument on May 3, 2010.

<strong>LEGAL STANDARD</strong>

23   **I.    Motion to Strike**

24       A Strategic Lawsuit Against Public Participation ("SLAPP") is a civil action "in which the

25   [non-moving party's] alleged injury results from petitioning or free speech activities by [the moving

26   party] that are protected by the federal or state constitutions." Vess v. Ciba-Geigy Corp., 317 F.3d

27   1097, 1109 (9th Cir. 2003). "California's anti-SLAPP statute was 'enacted to allow early dismissal

28   of meritless first amendment cases aimed at chilling expression through costly, time-consuming

litigation.'" Id. (citations omitted). Specifically, the statute allows a party to move to strike the non-moving party's cause of action if that cause of action "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."[1] See CAL. CIV. PROC. CODE § 425.16(b)(1).

An anti-SLAPP motion to strike requires a two-step inquiry. First, the moving party must make an initial prima facie showing that the other party's suit arises from the moving party's protected activity–i.e, an act in furtherance of that party's rights of petition or free speech. Vess, 317 F.3d at 1110. The other party's intentions in bringing the suit "are ultimately beside the point." Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). Similarly, the moving party need not demonstrate that any speech was actually chilled. See City of Cotati v. Cashman, 29 Cal. 4th 69, 75-76 (2002). The filing of a lawsuit is one example of protected activity. See Jarrow Formulas, 31 Cal. 4th at 734; CAL. CIV. PROC. CODE § 425.16(e) (providing that an "act in furtherance of a person's right of petition or free speech" includes any written or oral statement or writing made "before a . . . judicial proceeding" or "in connection with an issue under consideration by . . . a judicial body").

Nonetheless, "the critical point is whether the [non-moving party's] cause of action itself was *based on* an act in furtherance of the [moving party's] right of petition or free speech." Cotati, 29 Cal. 4th at 78 (citations omitted). The mere fact that an action was filed after protected activity took place–in this case, DCI's lawsuit against Urban–does not necessarily mean it arose from that activity. See id. at 76-77. As the California Supreme Court has cautioned, to construe "arising from" in Section 425.16(b)(1) as meaning "in response to" would in effect render all cross-actions potential SLAPPs. Id. at 77. Indeed, "to suggest that all cross-actions arise from the causes of action in response to which they are pled would contravene the statutory scheme governing cross-complaints." Id.

If the moving party meets its initial burden, the court proceeds to the second step and asks whether the non-moving party can demonstrate "a probability that he or she will prevail on the claim." CAL. CIV. PROC. CODE § 425.16(b). In order to do so, the non-moving party must "state and

---

[1] That the underlying action in this case is a counterclaim rather than an original complaint is not statutorily significant because the anti-SLAPP statute explicitly applies to complaints and counter-complaints. See Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 735 n.2 (2003); CAL. CIV. PROC. CODE § 425.16(h).

substantiate a legally sufficient claim." <u>Wilson v. Parker, Covert & Chidester</u>, 28 Cal. 4th 811, 821 (2002) (citation and internal quotation marks omitted). "Put another way, the [non-moving party] 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the [non-moving party] is credited.'" <u>Id.</u> (citation omitted). Although the court does not weigh the credibility or comparative probative strength of competing evidence, it must grant a motion to strike "if, as a matter of law, the [moving party's] evidence supporting the motion defeats the [non-moving party's] attempt to establish evidentiary support for the claim." <u>Id.</u> (citation omitted).

**II.      Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." <u>SmileCare Dental Group v. Delta Dental Plan of Cal.</u>, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." <u>Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 129 S.Ct. at 1950.

<b>DISCUSSION</b>

**I.      Motion to Strike**

DCI brings the anti-SLAPP motion to strike with respect to the following causes of action in Urban's counterclaim: (1) fraud in the inducement, (2) fraud, and (3) violation of Section 17200 of the California Business and Professions Code (hereinafter, "Section 17200"). According to DCI, all

of these causes of action arise out of DCI's alleged litigation activity. In support of this, DCI relies

heavily on paragraph 9 of Urban's counterclaim, which provides in its entirety:

> DCI's entire business scheme is intended to fraudulently induce companies to pay DCI money which DCI has not earned. If a company complains to DCI about its claims for payment, DCI's practice is to file a lawsuit. Indeed, DCI has litigated multiple lawsuits with clients in pursuit of gains from its fraudulent business model and practices.

(Def. Counterclaim ¶ 9 [Doc. No. 4].) However, even if DCI could meet its burden under Section

425.16(b)(1), the motion to strike nonetheless fails because the challenged counterclaims fall squarely

within an exception to the anti-SLAPP statute contained in Section 425.17(c).

Due to a "disturbing abuse" of California's anti-SLAPP law, which has undermined the very

constitutional rights that Section 425.16 was designed to protect, the Legislature in 2003 enacted

Section 425.17, rendering Section 425.16 inapplicable to certain actions. See CAL. CIV. PROC. CODE

§ 425.17(a). One of the exceptions provides that:

> Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:
>
> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
>
> (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.

Id. § 425.17(c). This exception was specifically intended to apply to cases against a business arising

out of its "commercial speech" or "conduct," see Brill Media Co. v. TCW Group, Inc., 132 Cal. App.

4th 324, 342 (2005), and the party moving to strike under the anti-SLAPP statute bears the burden of

establishing that the exception does not apply. Moreover, the exception applies even if the elements

of Section 425.16 would otherwise be satisfied. See id. at 330-31 (noting that although Section

425.17(c) does not alter the traditional two-prong burden-shifting approach, it does represent a

1    "procedural exception to the special motion to strike remedy" (citations omitted)).

2         In the present case, DCI has not met its burden of demonstrating that Section 425.17(c) does

3    not apply. On the contrary, an examination of Urban's counterclaim reveals that the "commercial

4    speech" exception is directly applicable. First, DCI is "primarily engaged in the business of selling

5    . . . services" within the meaning of the statute in that DCI styles itself as "an expert in overhead cost

6    reduction" that "helps companies identify undetected ways to reduce costs and maximize savings" for

7    a contingency fee. (See Pl. Compl. ¶ 12.) Second, the challenged "statement or conduct consists of

8    representations of fact about [DCI's] . . . services" within the meaning of Section 425.17(c)(1) in that

9    DCI's fraudulent misrepresentations about its services form the basis of Urban's counterclaim. (See

10   Def. Counterclaim ¶¶ 5-9.) Third, these statements were "made for the purpose of obtaining approval

11   for, promoting, or securing sales . . . of . . . [DCI's] . . . services" within the meaning of the statute in

12   that Urban's counterclaim alleges that those statements were made "to induce company managers to

13   enter into contracts for services with DCI." (See id. ¶ 6.) Finally, because the statements were made

14   "to induce a company to enter into a contract with DCI," (id. ¶ 7), this satisfies Section 425.17(c)(2)'s

15   requirement that "[t]he intended audience is an actual or potential buyer or customer."

16        DCI's arguments to the contrary are unavailing. In attempting to show that the "commercial

17   speech" exception does not apply in this case, DCI shifts the focus from the alleged conduct as a

18   whole to the allegations in paragraph 9 in Urban's counterclaim.[2] However, the Court cannot ignore

19   the fact that at the center of Urban's counterclaim is DCI's allegedly fraudulent misrepresentations

20   about its services, which amount to "commercial speech" that the Legislature expressly decided to

21   exempt from the application of the anti-SLAPP statute. See 132 Cal. App. 4th at 342. Although it is

22   true that the anti-SLAPP statute provides that it "shall be construed broadly," see Equilon, 29 Cal. 4th

23   at 60, there is a limit to how broadly the Court can construe it. In the present case, that limit was

24   expressly provided by the Legislature when it enacted Section 425.17(c), and DCI has failed to meet

25   its burden of demonstrating that the exception set forth there does not apply.

26

27        [2] As previously noted, paragraph 9 alleges that as part of DCI's fraudulent scheme, DCI makes
     it a practice to file a lawsuit against any company that complains to DCI about its claims for payment.
28   (Def. Counterclaim ¶ 9.) Paragraph 9 also alleges that "DCI has litigated multiple lawsuits with clients
     in pursuit of gains from its fraudulent business model and practices." (Id.)

Accordingly, DCI has failed to carry its initial burden of demonstrating that the challenged counterclaims "aris[e] from any act . . . in furtherance of [its] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" as that term is defined in Section 425.16(b)(1). That is because Section 425.17(c) explicitly excludes DCI's alleged conduct from the scope of Section 425.16. For the foregoing reasons, the Court **DENIES** DCI's motion to strike Urban's first, second, and fourth counterclaims.

The Court also **DENIES** Urban's request for attorney's fees. Section 425.16(c)(1) provides that a court shall award costs and reasonable attorney's fees to the non-moving party if the court finds that the motion to strike was "frivolous" or was "solely intended to cause unnecessary delay." CAL. CIV. PROC. CODE § 425.16(c)(1). "Frivolous" means "totally and completely without merit" or "for the sole purpose of harassing an opposing party." Id. § 128.5(b)(2). In this case, the Court does not believe the motion to strike was frivolous or that it was solely intended to cause unnecessary delay.[3]

## II.     Motion to Dismiss

In its Motion to Dismiss, DCI seeks to dismiss Urban's first, second, fourth, fifth, sixth, and seventh counterclaims for failure to state a claim pursuant to Rule 12(b)(6).

### A.     Fraud and fraud in the inducement

Urban's first and second counterclaims allege fraud and fraud in the inducement by DCI. To recover for common law fraud under California law, Urban must demonstrate: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." See Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997) (citation and internal quotations marks omitted). Fraud in the inducement is a subset of fraud. It occurs when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable*." Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394, 415 (1996) (citation and internal quotation marks omitted) (emphasis in original). The remedy for fraud

---

[3] To the extent Urban also seeks attorney's fees pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Court **DENIES** that request because Urban has not shown that it complied with Rule 11's "safe harbor" provision. See Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815, 826 (9th Cir. 2009) ("A Rule 11 motion for sanctions must be served on opposing counsel twenty-one days before filing the motion with the court . . . ." (citations omitted)); FED. R. CIV. P. 11(c)(2).

in the inducement is rescission. See id.

Morever, Rule 9(b) of the Federal Rules of Civil Procedure requires allegations of fraud or mistake to be stated "with particularity." In the Ninth Circuit, this rule "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir.1981) (citations omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (citation omitted)).

Urban has failed to satisfy the heightened pleading requirement of Rule 9(b). Although Urban arguably alleges sufficient facts to state the who, what, and when of the misconduct charged, it has provided only conclusory allegations as to *why* it believes the statements were false when made. Fraudulent intent cannot be proven by simply pointing to the defendant's subsequent nonperformance. See Tenzer v. Superscope, Inc., 39 Cal. 3d 18, 30-31 (1985). Rather, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted). In the present case, Urban's counterclaims cannot survive the motion to dismiss because Urban provides only conclusory allegations as to why Urban believes the statements were false when made. For example, Urban alleges in a conclusory matter that: (1) DCI engages in a practice of making such misrepresentations in order to induce companies to enter into a contract with DCI; (2) DCI then makes generic recommendations as to what the company should do to save money; (3) afterwards, DCI sits and waits for a period of time before claiming that any cost savings were the result of DCI's recommendations and ideas; and (4) if the company complains, DCI's practice is to file a lawsuit. (Def. Counterclaim ¶¶ 5-9.) Because there is absolutely no factual basis provided for these allegations, they are not sufficient "to raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555. Accordingly, the Court **GRANTS** the motion to dismiss as it relates to Urban's counterclaims for fraud and fraud in the inducement.

### B.     Unfair competition claim

Urban's fourth counterclaim alleges DCI violated California's unfair competition law by engaging in a pattern of unlawful, unfair, and fraudulent conduct. Section 17200 defines unfair

competition as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. Because the statute is written in the disjunctive, it prohibits three separate types of unfair competition: (1) *unlawful* acts or practices, (2) *unfair* acts or practices, and (3) *fraudulent* acts or practices. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). In the present case, Urban's counterclaim alleges that DCI violated all three sub-parts of the unfair competition law.

With respect to the "unlawful practices" part, Urban has failed to allege sufficient facts to state a claim for relief. By proscribing "any unlawful" business practice, Section 17200 "borrows" violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. Cal. Tech., 20 Cal. 4th at 180. Because Urban fails to specifically allege any other law that DCI violated, the Court finds that Urban failed to state a claim for relief under the "unlawful practices" prong of Section 17200.[4]

Likewise, with respect to the "fraudulent practices," Urban has failed to allege sufficient facts to state a claim for relief. "[F]raudulent acts are ones where members of the public are likely to be deceived." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008) (citation omitted); accord South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 888 (1999). Here, the counterclaim provides only conclusory statements as to whether the public was impacted at all by DCI's alleged actions. As already noted, these allegations of a fraudulent scheme are insufficient "to raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555. Accordingly, because Urban has failed to demonstrate that members of the public are likely to be deceived, it failed to state a claim for relief under the "fraudulent practices" prong as well.

Finally, Urban has failed to allege sufficient facts to state a claim for relief under the "unfair practices" prong. Where direct competitors are concerned, the California Supreme Court has concluded that the word "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cal. Tech.,

---

[4] In its opposition to DCI's Motion to Dismiss, Urban alleges for the first time that the challenged conduct is "unlawful" because it violates Sections 1709 *et seq* of the California Civil Code. However, this allegation does not appear anywhere in Urban's counterclaim.

20 Cal. 4th at 187. On the other hand, when an action is brought by a consumer or a competitor alleging a different kind of violation, as is the case here, it appears a broader definition would apply. In that context, an "unfair" business practice occurs "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." See People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 4th 509, 530 (1984), abrogated on other grounds Cal. Tech., 20 Cal. 4th at 186-87 & n.12; accord McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008). Nonetheless, because Urban provides only conclusory statements as to DCI's alleged fraudulent scheme, the Court cannot conclude if those actions "offend[] an established public policy" or if they are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." See Casa Blanca, 159 Cal. App. 4th at 530. Accordingly, Urban has also failed to state a claim for relief under the "unfair practices" prong.

For the foregoing reasons, the Court **GRANTS** the motion to dismiss as it relates to Urban's counterclaim for violation of California's unfair competition law.

C.    Declaratory relief

Urban's fifth counterclaim seeks declaratory relief concerning the parties' rights, duties, and obligations under the Agreement. Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Declaratory relief, however, may be unnecessary where an adequate remedy exists under some other cause of action. See Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). Likewise, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1356-57 (9th Cir. 1985) (en banc) (per curiam) (citations omitted).

In the present case, Urban's request for declaratory relief appears to be redundant in the face of the other causes of action, and it does not appear to be useful in clarifying the legal relations between the parties. Specifically, Urban wants the Court to adjudge whether the Agreement is null and void due to fraud or failure of consideration such that Urban owes no compensation thereunder. (Def.

Counterclaim ¶ 39.) However, this is identical to the relief sought in Urban's third counterclaim (breach of contract) and DCI's second claim (breach of contract). (See Def. Counterclaim ¶¶ 24-28; Pl. Complaint ¶¶ 25-29.) In other words, the resolution of the parties' competing breach of contract claims would afford Urban the exact relief sought in its counterclaim for declaratory relief. Accordingly, the Court **GRANTS** the motion to dismiss in this regard.

### D.  Breach of the covenant of good faith and fair dealing

Urban's sixth counterclaim alleges a breach of the implied covenant of good faith and fair dealing. However, "if the plaintiff's allegations of breach of the covenant of good faith 'do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" Bionghi v. Metropolitan Water Dist., 70 Cal. App. 4th 1358, 1370 (1999) (citation omitted). In the present case, it does not appear that Urban's counterclaim for breach of covenant of good faith and fair dealing goes beyond Urban's counterclaim for breach of contract. Moreover, both of the counterclaims seek the same damages. Accordingly, because the sixth counterclaim is "superfluous" to the allegations of breach of contract, see id., the Court **GRANTS** the motion to dismiss in this regard.[5]

### E.  Rescission based upon fraud

Finally, Urban's seventh counterclaim seeks rescission based upon fraud pursuant to Sections 1567 and 1689(b) of the California Civil Code. As relevant here, Section 1567 provides that "[a]n apparent consent is not real or free when obtained through . . . fraud." CAL. CIV. CODE § 1567(3). Likewise, as relevant here, Section 1689(b) provides that a party to a contract may rescind the contract if its consent was obtained through fraud or if there is a failure of consideration. Id. § 1689(b). However, as previously noted, Urban's allegations of fraudulent misconduct against DCI are not stated

---

[5] To the extent Urban alleges this is a *tort* claim for breach of covenant of good faith and fair dealing, it nonetheless fails because Urban cannot point to any "independent duty" between the parties. See Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 102 (1995) (concluding that, with the exception of insurance contracts, there can be no tort recovery for breach of the implied covenant of good faith and fair dealing, "at least in the absence of violation of 'an independent duty arising from principles of tort law'" (citation omitted)); accord Bionghi, 70 Cal. App. 4th at 1370 ("[T]ort recovery for breach of the covenant is available only in limited circumstances, generally involving a special relationship between the contracting parties, such as the relationship between an insured and its insurer." (citation omitted)).

1  with sufficient particularity as required by Rule 9(b). Accordingly, for the same reasons as before, the

2  Court **GRANTS** the motion to dismiss as to this counterclaim.

3  **CONCLUSION**

4       For the foregoing reasons, the Court **DENIES** the motion to strike Urban's first, second, and

5  fourth counterclaims pursuant to the anti-SLAPP statute. Nonetheless, because Urban has failed to

6  plead those counterclaims with requisite particularity, and because the other challenged counterclaims

7  fail to allege sufficient facts to state claims for relief, the Court **GRANTS** the motion to dismiss with

8  respect to Urban's first, second, fourth, fifth, sixth, and seventh counterclaims. All of those

9  counterclaims are dismissed **WITH LEAVE TO AMEND**. Urban shall file an amended counterclaim

10  **within 21 days** from the filing of this Order.

11       **IT IS SO ORDERED.**

12

13  DATED:  May 6, 2010

14  IRMA E. GONZALEZ, Chief Judge
    United States District Court

- 13 -                                    10cv369-IEG (JMA)